EASTERN DIST.
*April,* 1839.

ROCHE'S HEIRS
*vs.*
GROYSILLIERE
ET AL.
that if she took possession of the land, knowing and believing it to belong to Jumonville, she did not possess as owner, and those claiming under her could not maintain a possessory action. The defendants have not shown that they possessed by virtue of a title, or under any fixed boundaries; but as they appear to have been a long time upon the land, we are unwilling to pass upon their rights in the present situation of the case. Justice appears to us to require that it should be remanded for a new trial.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT, JUDGE WATTS PRESIDING.

Under the Spanish laws, as they existed in this state in 1824, a legal mortgage attached in favor of minors, upon the property of the sureties of their curator, *ad bona.*

On the adoption of the Louisiana Code in 1825, all mortgages, whether conventional, legal or judicial, are required to be recorded; and in order to preserve their evidence, the inscription of mortgages must be renewed before the expiration of ten years; otherwise, their effect ceases after the expiration of that time, even against the contracting parties.

Mortgages to which husbands, tutors and curators are subjected by law, are the only ones not requiring registry by the Code; but under the Spanish law, there is no exception made with respect to the legal mortgage on the property of the surety of a curator.

So, where more than ten years elapsed, after the promulgation of the Louisiana Code, before the minors asserted their claim against the *surety* of their curator *ad bona*, and without the re-inscription of their legal mortgage within that time : *Held*, that the effect of the mortgage ceased, and it could no longer be enforced against the property on which it previously existed.

EASTERN DIST.
April, 1839.

ROCHE'S HEIRS
vs.
GROYSILLIERE
ET AL.

This action commenced by the executory process, against mortgaged property in the possession of a third person.

The facts and pleadings of the case, are fully stated in the following opinion and judgment of the district judge :

" The heirs of Roche allege and prove, that Chretien gave his note, dated 29th March, 1825, to the widow Roche, payable one year after date, for one thousand six hundred dollars. The payment of this note was secured by a mortgage on a lot of ground, sixty by one hundred and twenty feet, at the corner of St. John and Common street ; this note was not paid, but on 29th March, 1826, Chretien paid the interest and gave another note, payable in one year, for one thousand six hundred dollars ; the original paraphed note was retained, and a receipt was given to surrender it if the second note should be paid. In 1827, the widow Roche obtained an order of seizure, but suspended it for a year, Chretien paying the interest.

" Chretien being desirous of paying his debt to the heirs of Roche, in May, 1835, made a power of attorney constituting Felix Grima his attorney in fact, to sell the lot at a price not less than two thousand dollars.

" Charles Tremoulet, the husband of one of the heirs of Roche, was to receive the proceeds of the sale, and if sold on a credit, was to approve the notes, endorsers, etc.

" On the 29th August, 1835, Felix Grima made an act, under private signature, in which, reciting the power of attorney from Chretien, he sold the lot to Groysilliere, through Denis, her agent, for the sum of two thousand five hundred dollars, viz : one thousand two hundred dollars when the act of sale (notarial) should be made, and one thousand three hundred dollars in notes, at six and twelve months. On 23d March, 1836, Tremoulet approved the sale and accepted the payment.

Eastern Dist.
*April*, 1839.

roche's heirs
*vs.*
groysilliere
et al.

" The money not being paid on 10th May, 1836, the heirs of Roche, alleging and proving these facts, obtained an order of seizure and sale against Groysilliere, as third possessor and owner, under the private act of sale.

" On the 18th June, 1836, Chretien filed an opposition and intervention in this suit :

" 1st. Chretien claimed some credits from the heirs of Roche, for money paid on account of the mortgage : these are proved and allowed to him.

" 2d. Chretien insists that he, and not Groysilliere, is the owner of the mortgaged lot, and alleges that the right to the lot is in contest between him and Groysilliere, in the suit No. 13,007, brought by Groysilliere against Grima, to compel a title ; and that the proceedings on the mortgage ought to be decided against him.

" 3d. He concludes by praying for a judgment adapted to the nature of the case.

" On the 18th June, 1836, A. J. Walker and F. G. Walker, and on 2d March, 1837, L. C. Louques, daughter of Amelie Walker, intervened in the suit, and alleged that P. A. Cuvillier, deceased, was the curator *ad bona* of A. F. Walker, and tutor of F. G. Walker, and of Amelie Walker; that P. A. Cuvillier gave a bond for five thousand dollars for the faithful administration of their property, on 11th December, 1824 ; that Chretien was the security on the bond ; that the bond was recorded in the mortgage office of New-Orleans, on 18th December, 1824, and operates as a mortgage on the property of Chretien.

" That A. J. Walker obtained a judgment against Cuvillier, on his claim, on 30th May, 1834, for one thousand five hundred and forty-one dollars, with interest from 1st January, 1833, till paid.

" There has been no settlement with the two other minors; that Cuvillier is dead, and his estate insolvent.

" These claimants demand to be paid, by preference, out of the proceeds of this lot of ground.

" It appears that Chretien is the dative executor of Cuvillier, whose succession was opened in the parish of Iberville.

"On 30th June, 1836, Groysilliere filed his answer and opposition :

"1st. She pleads that the mortgage of Roche has ceased to have effect, not having been recorded within ten years.

"2d. She claims the credits set up by Chretien.

"3d. She asks leave to deposit two thousand five hundred dollars, the price to be distributed to the mortgagees, and the same is deposited.

"4th. She sets up and alleges a title to the lot, under the sale made by Grima, as attorney of Chretien, and refers to the suit in which that matter is in litigation.

"5th. She denies the right of mortgage of the Walkers, and insists that their claim cannot be liquidated in this court, but only with the succession of Cuvillier.

"6th. She sets out that since her purchase of the lot, she has fitted it up, erected a house and made great improvements.

"7th. She requires that the property be not sold until the title be settled.

"It appears to me that the claim of the heirs of Roche against the property, to the extent of the purchase money, cannot be contested by Groysilliere.

"The amount is liquidated at the sum of ——, with interest thereon, at the rate of ten per cent. from the —— until paid ; for this sum the heirs of Roche are entitled to a judgment against Chretien.

"With regard to the claim of the Walkers, the counsel of Groysilliere resists their mortgage, alleging that there is no text of the Spanish law which gives a mortgage against the property of sureties, and that the Code of 1808, page 454, article 16, limits tacit or legal mortgages to those given by express law. It was a strong argument to urge, that the text of the Code referred to, gave only the tacit mortgages there referred to and immediately following. A different interpretation has been obtained. The text of the Partidas 6, title 16, appears to give a mortgage against the property of sureties of the bonds of tutors and curators, and the commen-

EASTERN DIST.
*April*, 1839.

ROCHE'S HEIRS
*vs.*
GROYSILLIERE
ET AL.

EASTERN DIST.
April, 1839.

ROCHE'S HEIRS
vs.
GROYSILLIERE
ET AL.

tators have so considered for several hundred years; there cannot be better evidence of the law and its real construction.

"The claim of one of the Walkers is liquidated, and unless the heirs of Roche can point out other property, and furnish means for its discussion, it appears to me, they, Walkers, cannot be deprived of their preference of payment out of this property, if it be not sufficient to pay the whole claims.

"Groysilliere, by her purchase, admitting it to be established, could not take the property free of the mortgage of the Walkers. If she succeeds in obtaining a title to the property, she may have a claim over against Chretien; or, perhaps, she may even now have a right to call for the discussion of other property of Chretien. If Groysilliere has made improvements as she alleges, she may be entitled to claim *quantum res pretioror factor est.*

"It is difficult to say what must be the decree in this case. If the question of the title to the lot was settled between Groysilliere and Chretien, it would remove some, but not all of the difficulties. If the property was decreed to Groysilliere, at the price of two thousand five hundred dollars, it would still be subject to the mortgage of the Walkers, for which she would have recourse over against Chretien. If the property be decreed to Chretien, Groysilliere may have a claim for the value of her improvements. In any event, unless Groysilliere see fit to protect herself by payment of the mortgage to the Walkers and to the heirs of Roche, or pray discussion of other property of Chretien, and furnish means to carry it on, as to the claim of the Walkers, the property must be sold.

"A judgment should pass against Chretien, in favor of the heirs of Roche, for the amount of their claim; and against Chretien, in favor of the Walkers, for the amount of the tutors bond on which he is security, subject to such deduction as he may be entitled to, on a liquidation of the claims of the Walkers against the succession of Cuvillier."

Judgment was rendered in favor of the heirs of Roche against G. Chretien, for two thousand seven hundred and forty-six dollars, with ten per cent. interest on one thousand

six hundred dollars, from the 31st March, 1837, until paid ; and that the heirs of Walker recover from Chretien the sum of five thousand dollars as surety in Cuvellier's bond, as cura- tor *ad bona* of the minors Walker, with legal mortgage, from the recording this bond in the parish of New-Orleans, the 24th December, 1824, etc.; that this mortgage is to have the preference of the special mortgage of the plaintiffs ; and that unless Madame Groysilliere pay this judgment, the lot of ground is to be seized and sold to satisfy it, after estimating her improvements, and reserving her rights against Chretien, etc., and that Chretien pay costs.

The defendant, Madame Groysilliere, appealed. The appeal is taken against the plaintiffs and the heirs of Walker.

*L. Peirce,* for the plaintiffs. How can the defendant oppose to the heirs of Roche, that their mortgage was not recorded again within the ten years, when the sale was made to her by Chretien for the express purpose of paying this debt, and she undertook and assumed to do so.

2. The testimony of the notary shows, (who was also the agent of Chretien,) that the agent of Roche's heirs was present at the sale, and it was understood that the sum of two thousand five hundred dollars was to be paid to him out of the proceeds of the property, as such ; that the mortgage of Mrs. Roche was to be then raised. He agreed on receiving this sum to raise the mortgage, and which he was to receive from the defendant herself.

*Roselius,* for the defendant and appellant. The mortgage of the plaintiff is inoperative through lapse of time. An inscription of a mortgage must be renewed at the end of every ten years.

2. The heirs of Walker cannot assert a mortgage against any property owned by Chretien, on account of his suretyship in the curator's bond. There is no legal or tacit mortgage, (at least since the Civil Code of 1808,) existing on the property of sureties of tutors or curators of minors, on account of their administration.

EASTERN DIST.
*April,* 1839.

ROCHE'S HEIRS
*vs.*
GROYSILLIERE
ET AL.

3. Even if such tacit or legal mortgage ever existed in this case, it has ceased and become extinct, in not being registered or *re-inscribed* within ten years immediately before the institution of this suit.

*Hennen,* for Walker's heirs, insisted that the judgment against Cuvillier, is legal evidence against his surety for the amount due the minors; especially when supported by the inventory of the estate and the other proceedings in the Court of Probates.

2. These minors have a tacit or legal mortgage on all the estate of their curator *ad bona,* and that of his surety, which commenced with the registry of the curator's bond in December, 1824. *7 Febrero adicionado,* 24, *No.* 51. *5 Tapia,* 266, *No.* 21. *6 Partida,* 16 *title, law final. Sala Derecho Real, lib.* 1, *title* 7, *No.* 38, (*edition* 1803;) *No.* 39, (*edition* 1820.) *Asso & Manuel,* (*Civil Laws of Spain,*) *page* 33. *Code, lib.* 3, *title* 1, *law* 13, *section final.*

3. The renewal or re-inscription of mortgages, provided in article 3333 of the Louisiana Code, does not apply to the tacit or legal mortgages of minors against their tutors, curators, etc. This article expressly reserves the rights of minors, and forms an exception to the general rule. The Spanish law is full on this subject, and it was in force in 1824, except where it was expressly abrogated. This court has also repeatedly decided, that mortgages, privileges, &c., created by that law, though not found in the Civil Code of 1808, were valid, and in force here.

4. By the provisions of the old Code, it was not required to record mortgages against tutors and their sureties; and the reason is, it was a legal mortgage. *Civil Code, page* 464, *article* 54.

*Pichot,* for the minor Walker, represented by his mother, Amelie Walker. The judgment and proceedings of the Court of Probates in favor of a co-heir, is evidence of the sum allowed, and the amount of the claim of each; if it is for too much, the surety of the tutor should show it.

2. By the Spanish law, the property of the tutor and his

surety are tacitly mortgaged for the restitution of the minor's <span style="float:right">EASTERN DIST.</span>
estate.    The bond in this case was duly recorded.    *Partida* <span style="float:right">*April*, 1839.</span>
6, *title* 16, *law* 21.

ROCHE'S HEIRS
*vs.*
GROYSILLIERE
ET AL.

3. Prescription cannot be invoked in this case, for not
renewing or re-inscribing the legal mortgage of the minors
Walker.    The obligation of the surety is accessory to that of
the tutor, or curator *ad bona*, and must last as long ; and it
cannot be pretended that a renewal of the inscription is
necessary or required for the tutor's bond.

*L. Janin*, for G. Chretien.

*Rost, J.*, delivered the opinion of the court.

This is an hypothecary action instituted against a third
possessor, on an act bearing date the 29th of March, 1825,
and importing confession of judgment.    No opposition is made
to the amount allowed by the District Court, or to the right
of the plaintiff to recover it in this action, but the heirs of
Walker have intervened, praying to be paid by preference
out of the proceeds of the sale, the amount of a legal mort-
gage, anterior in date to that of the plaintiffs, and existing
in their favor upon the same property.

It appears, that in 1824, Gerard Chretien, the original
debtor of the plaintiffs, and at that time the owner of the
mortgaged premises, became security on the bond of the
curator *ad bona* of the intervenors, and that in the same year
the bond was recorded in the parish where the property is
situated.    That the curator died without having rendered
his account, and left no property ; the account of the claim
of one of the intervenors was liquidated contradictorily with
the curator, and the others aver, that they are ready to prove
the amount due them.

The third possessor opposes this claim on various grounds,
and alleges particularly, that the intervenors have no mort-
gage or privilege upon the property.    Judgment was given
in favor of the intervenors in the court below, and the third
possessor appealed.    We believe, that under the Spanish
laws, which were still in force in 1824, a legal mortgage

Under the
Spanish laws, as
they existed in
this state in 1824,
a legal mortgage
attached in favor
of minors, upon
the property of
the sureties of
their curator, *ad
bona.*

EASTERN DIST.
April, 1839.

ROCHE'S HEIRS
vs.
GROYSILLIERE
ET AL.

On the adoption of the Louisiana Code in 1825, all mortgages, whether conventional, legal, or judicial, are required to be recorded; and in order to preserve their evidence, the inscriptions of mortgages must be renewed before the expiration of ten years; otherwise, their effect ceases after the expiration of that time, even against the contracting parties.

Mortgages to which husbands, tutors and curators are subjected by law, are the only ones not requiring registry by the Code; but under the Spanish law, there is no exception made with respect to the legal mortgage on the property of the surety of a curator.

So, where more than ten years elapsed, after the promulgation of the Louisiana Code, before the minors asserted their claim against the surety of their curator ad bona, and without the reinscription of

existed in favor of minors, upon the property of the sureties of curators ad bona, and that the bond in this instance having been duly recorded, operated as a legal mortgage upon the property specially mortgaged to the plaintiffs. But in 1825 the law was changed. The article 3317, of the Louisiana Code, makes it necessary that all mortgages, whether conventional, legal or judicial, should be recorded ; and article 3333 provides, that the registry shall preserve the evidence of mortgages during ten years, but that their effect will cease, even against the contracting parties, if the inscriptions are not renewed, before the expiration of that time, in the manner in which they were first made. Mortgages to which husbands, tutors and curators are subjected by law are alone excepted from this rule. No exception is made with respect to the legal mortgage which existed on the property of the surety of a curator under the laws of Spain ; and as more than ten years elapsed between the promulgation of the Louisiana Code and the intervention of the heirs of Walker in this suit, without the inscription of their mortgage being renewed, we conclude, that the effect of the mortgage has ceased, and that the plea of the third possessor is well founded in law.

Gerard Chretien has intervened and claimed title to the mortgaged premises, and the third possessor has joined issue. That issue cannot be tried in the present suit, nor can the judgment rendered therein affect in any manner the ultimate rights of the parties to the property. Whoever be the owner at this time, the plaintiffs are entitled to their remedy.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be avoided, annulled and reversed ; and proceeding to give such judgment as ought to have been given in the court below, it is further ordered, adjudged and decreed, that the intervention of the heirs of Walker, and so much of that of Chretien, as relates to the question of title to the mortgaged premises, be dismissed at their cost in both courts ; and that the said mortgaged premises be seized and sold to foreclose the mortgage, and pay

the plaintiff the sum of two thousand seven hundred and forty-six dollars, with ten per cent. interest on sixteen hundred dollars, from the 31st of March, 1837, until paid, and costs.

It is further ordered and adjudged, that the defendant pay the costs of this appeal, taken between her and the plaintiffs.

EASTERN DIST.
*April*, 1839.

ROCHE'S HEIRS
*vs.*
GROYSILLIERE.
their legal mortgage within that time : *Held*, that the effect of the mortgage ceased and it could no longer be enforced against the property on which it previously existed.